## S. G. FRENCH *et al. v.* S. PICARD.

1. AGRICULTURAL LIEN—MORTGAGE.—The object of the statute for the encouragement of agriculture, approved February 18, 1867, was to give notice by the contract of the amount of the lien upon the crop, so that others who might be disposed to make advances to the laborers might know, by reference to the contract on file, the precise extent of the prior lien. The third section of the act provides that in the enrollment, the amount of indebtedness shall be set down in one column, and that the party agreeing to advance a specific sum during the year, may enroll his contract.

1. SAME—SAME—CASE IN JUDGMENT.—F. entered into a contract with certain laborers to cultivate a plantation on shares, and the contract provided that all advances made by F. in cash or supplies, should be a lien upon their share of the crop, and the contract was enrolled on the 11th of February, 1870. P. on the 28th of April, 1870, took a mortgage on their share of the crop from the laborers, which was recorded the same day. It secured $200.00, already advanced, and $200.00 more to be advanced in the course of the year to enable them to cultivate said plantation. *Held:* Had F.'s contract specified any sum of money, he would have had a priority of lien, but P.'s mortgage specified the amount, gave notice of the extent of his lien, and he is entitled to prior satisfaction out of the property subject to the lien.

Appeal from the chancery court of Washington county. Hon. E. STAFFORD, chancellor.

The facts of the case are sufficiently stated in the opinion of the court and briefs of counsel.

The following are the assignments of error, to-wit:

1. The court erred in rendering the final decree in said cause, on the 25th day of July, 1872.

2. The court erred in not decreeing that appellant was entitled to prior satisfaction out of the proceeds of sale of cotton sequestered in said suit, and in failing to dismiss the bill of complainant.

3. The court erred in decreeing payment to the appellee, Picard, of proceeds of sale of cotton which did not belong to his mortgagors, and to which he was not entitled in any event under the pleadings.

*Nugent & Yerger,* for appellants:

There are two questions for solution in this case, to-wit: Who was entitled to priority of payment out of the cotton

seized? and second, If the appellee held a lien upon it, what was the extent of that lien, and what amount of the proceeds of sale was he entitled to recover? This, if the court should not find that the bill was not maintained as presented, and this preliminary suggestion in the matter for it, may be conclusive of the whole case.

The proceeding was instituted under the agricultural lien law of February 18, 1867. The writ of sequestration was issued without bond, and the cotton in question seized under it. The instrument of writing, under which the appellee claims, after reciting that Picard and the laborers mentioned, had contracted together under the law above referred to, and they had become indebted to him $200.00, for supplies advanced; and that said Picard had agreed to advance the further sum of $200.00, mortgaged to Picard all their interest in the cotton crop, deed to be void if the debts were paid by December, 1870. It was executed by *Jacob Addison, Andrew McCoy, Lawrence Dow* and *Joseph Paul,* on 28th April, 1870, and *recorded* same day, but was never *filed and enrolled* in the office of the circuit clerk of Washington county, as required by the third section of the act aforesaid. Upon this statement of appellee's case, it is manifest that he had no lien under the act for the encouragement of agriculture, because of the failure to *file and enroll* his mortgage in the circuit clerk's office as the law requires.

The right to enforce the peculiar remedy provided by the fourth section of said act, only arises after a full compliance with the antecedent clauses of the act.

In this case it does not exist at all. The facts by his bill, fail to bring the case within the purview of the act, and he was not entitled to the writ of sequestration. A writ issued without the fiat of the Chancellor or the execution of a bond of indemnity, is absolutely void, and all proceedings taken under it are necessarily void. If this view of the case be taken by the court, it disposes of it at once, and necessitates a reversal of the decree below, and a dismissal of

the bill. If however, the court should be of opinion that the bill might be maintained as a bill to foreclose the mortgage of Picard, then the question is still open as to the equity of the appellant to prior satisfaction. The contract under which he claims this priority, is an ordinary farming contract between the land owner and the laborer, and among other things contains this clause : " all advances made by S. G. French, in cash or supplies, and all losses, deficiencies or damages hereinbefore mentioned, will constitute and be a lien upon the crop of the party of the second part. A failure to comply with the conditions of this contract, is to operate and be construed as a termination thereof to all intents and purposes."

This contract was signed by the same parties who signed the agreement or deed to Picard, was attested and "*filed and enrolled* February 11, 1870," in the circuit clerk's office. The contract lien in favor of appellant having been "filed and enrolled," being prior to the deed or mortgage to the appellee, unquestionably gives him priority of payment, unless upon its face it is void for uncertainty. The court below seems to have considered the lien void on this account, and proceeded to render a decree giving specific statutory relief in a case that did not warrant relief. The second section of the act provides that when any owner or lessee of any plantation or farm, shall make any contract with laborers to cultivate such farm or plantation, for a share or shares of the crop, and such owner or lessee shall make advances of money, or provisions or, clothing, in accordance with the provisions of such contract, such owner or lessee shall have a lien on the share of such laborers for the payment of the same ; but does not require the amount of the advances, or the date of the payment should be inserted in the deed or agreement. In fact it would be impossible to do so in any case. The wants and necessities of the laborers are the standard by which the advances are to be measured; and they can never be approximated in advance ; and while the form of the enrollment of contract liens contains columns

for these items, it by no means follows, that both or either of them is necessary to create a valid lien. In fact the proviso to the third section of the act seems to justify the conclusion that a specific amount in advances, was not ordinarily to be inserted in these agreements or contracts. Certainly it would be impossible to make a definite stipulation. The object of the law was to secure the payment of debts contracted for advances of money, purchase of supplies, and other things *necessary* for the cultivation of a farm or plantation, and to protect the owner of the soil against loss in his advances to laborers.

The plain object of the law, was to charge the future crop with the payment of all the advances made for its production. Parker v. Fry, 43 Miss., 260; Bledsoe v. Stevens, 16 Vt., 179; Booth v. Barnum, 9 Conn., 286. In any point of view, therefore, Picard had notice of the contract between the appellant and the laborers on his plantation, and knew that by the terms of that contract, the laborers' share of the crop to be grown by them, stood charged with their indebtedness to French, as an *equitable lien,* and he cannot claim exemption from the ordinary rule in such cases.

*F. & L. B. Valliant,* for appellees:

On the 7th day of February, 1870, French, as the landlord entered into a plantation contract with certain laborers, to the effect that he would furnish the land, mules, etc., and the laborers would furnish the labor, and the crop should be divided equally, one-half to French and the other half to the laborers. Filed and enrolled February 11, 1870.

It is under this contract and lien and enrollment that French claims priority of Picard, whose contract lien was not recorded until April, of the same year. We will here first notice the probable cause of the controversy. The head of the "squad" entered into the contract with French, under the name of Jacob Turner, and one other as Lorenza Scott. The same men entered into the contract with Picard under the names of Jacob "Addison" and Lorenza "Dow."

It is therefore probable that if French's contract had been such a one as would give him any lien under the act of 1867, Picard would have been misled by this discrepancy, for, seeing a contract enrolled in the name of Jacob Turner and Lorenza Scott, could give him no notice of a similar contract with Addison and Dow.

Considerable evidence is taken to show what Jacob's real name was, which seems to be an uncertain point with all his acquaintances. He says, when a slave, he was called Turner; that now he takes his father's name, Addison. If this was the case, then French had the wrong name, and not Picard, and the same as to "Scott," "Dow." Is French's contract in itself such as to entitle him to a lien at all under the agricultural lien law of 1867? There is no contract for advances to be made by French, in his contract, under which he claims. He was not bound to advance anything at all, and in no part of the contract is there a promise to advance supplies. But he is to have a lien for all advances made by him, but there is no corresponding obligation on his part, to advance. Appellant relies on the second section of the act which provides for a lien for supplies, and there must be a mutual obligation. The legislature intended by the act to enable the laborer to obtain credit for his necessary supplies. But to give to French's contract the construction claimed for it, would, or might entirely defeat that intention. Suppose, after signing the contract, French had refused to advance to the laborers anything, he would not be violating his contract; yet, with it enrolled (if it has the effect claimed for it), no one else would feel safe in making advances to the laborers, who had nothing but their prospective crops to pledge. Thus the object of the law would be defeated. This, we think, is entirely consistent with the view taken by this court in Bain v. Brooks, 46 Miss., 537. But again : To entitle any one to a lien under that law, the contract must be enrolled ; and the law prescribes that in the enrollment the amount intended to be secured shall be expressed in a column for that purpose. Then how could

French's contract have been enrolled, there being no amount specified in it. He could have a lien only to the amount enrolled, and if that was blank, his lien would be blank. The object of the law was not only to give notice of the incumbrance, but to give notice also of the extent of that incumbrance, so that parties dealing with the laborer would know exactly to what extent his crop was incumbered. In French's contract, he extends his lien to "losses, deficiencies and damages," items certainly not contemplated by the legislature to be secured by that act, and showing clearly that the parties did not contemplate bringing their contract under that act. French did not have his contract recorded as a mortgage, and hence Picard had no notice of it as such, even if by its terms, it could be called a mortgage. It was only enrolled as an agricultural lien, and fairly in effect, as such, it can have no effect at all against Picard. On the other hand, Picard's contract comes strictly within the act, he obligates himself to furnish a given amount of supplies, making special mention of the agricultural lien act, and a lien thereunder, also to have the effect of a mortgage. The contract is enrolled by the circuit clerk according to the act, and is also recorded by the chancery clerk, as a mortgage. It will be observed that the Chancellor gave Picard a decree for less than his demand, which deduction would cover every item of his account not strictly supplies.

There are several questions of fact presented by the pleadings and proof which, upon an original hearing, might be proper subjects for discussion, but all of these questions have been passed upon by the Chancellor, and are now scarcely subjects for review. Upon the face of French's own contract, and by his own showing, he has no standing whatever in court.

PEYTON, C. J., delivered the opinion of the court:

The appellant, S. G. French, entered into a contract with certain laborers therein mentioned, to cultivate a certain plantation, on shares. The contract provides that all ad-

vances made by said French, in cash or supplies, shall constitute and be a lien upon the share of the crop of said laborers, made on said plantation, in the year 1870. This contract was filed and enrolled on the 11th day of February, 1870. The appellee, S. Picard, on the 28th day of April, 1870, took a mortgage from said laborers, on their share of the crop, raised on said plantation for that year. This mortgage was duly recorded, on the 28th day of April, 1870. The said mortgage states that said Picard had already advanced to said laborers $200.00, and had agreed to advance them $200.00 more to enable them to cultivate said plantation for that year.

The priority of lien is the only legal question involved in this case.

The object of the statute for the encouragement of agriculture, approved February 18, 1867, was to give notice by the contract of the amount of the lien upon the crop, so that others who might be disposed to make advances to the laborers, might know, by reference to the contract on file, the precise extent of the prior lien. This clearly appears from the form of the enrollment of the contract as prescribed by the third section of said act, which requires that the amount of indebtedness shall be set down in one column, and also from the proviso in said section, which provides that a party agreeing to advance a specific sum during the year, may enroll his contract, which shall be equivalent to notice of his lien for the full amount so agreed to be advanced, but the lien shall be limited to the amount actually advanced, with the interest thereon. It was evidently intended, that the amount of the lien should appear from the enrollment of the contract. Had the contract of French specified any sum of money, he would have had a priority of lien to that of Picard, whose contract was of a subsequent date. But Picard's mortgage showed that two hundred dollars · had already been advanced by him to the laborers, and two hundred dollars more was to be thereafter advanced by him to

them for agricultural purposes.   This was notice to the public of the extent of his lien, and gave him a right to prior satisfaction out of the property subject to the lien.

The law of the case is very clear, but the facts are complicated and difficult to understand.   And as the Chancellor made his decree upon controverted facts, we do not feel authorized, under the circumstances of this case, to pronounce the decree erroneous.

The decree must, therefore, be affirmed.